Our final argument set for the day Garcia and XIHP versus Garland case number 21-70120 Garcia and XIHP versus Garland case number 21-70120 Garcia and XIHP versus Garland case number 21-70120 Good morning your honors! May it please the court my name is Sylvia Miller representing Milagro Pineda Garcia and her son. Like to reserve 2 minutes of my time for rebuttal. Petitioner is appealing the denial of her applications for asylum withholding and protection under the Conventions Against Torture. The many issues briefed by the parties I would like to focus on three today unless the court has other questions. First, asking this court to find that the harm suffered by petitioner rises to the level of past persecution. Second, in the alternative that the harm compels a finding of well-founded fear of future persecution. And finally, finding that remand is appropriate for the petitioner's correct particular social group in the first instance. Any remaining time will address petitioner's cat claims. Can I ask about the prior persecution? What we have cases that seem to go require a lot more than what was suggested here. There's no question that petitioner was probably scared. She witnessed a murder but was there what was the threat against her that rose to the persecution in your view? Yes, your honor. So one important aspect of this case is that petitioner not only saw her cousin and his friend being murdered in front of her in broad daylight, but immediately after that incident the same gang members that had murdered those two people pointed a gun in her direction and shot at her. After that, gang members confronted her in person at her place of again. In the criminal court context, being shot at with someone by the gun could rise to the level of attempted murder, which is an extremely serious crime. She would be a crime victim, but to follow up on my brother's question, how would you define the particular social group here so that she we can squeeze her into that category under the Refugee Act? And I have to say your definition and answering that question has been somewhat of a moving target in this case. I don't know if you represented her previously before the board, but the definition has changed over time. Your honor, yes, I did not represent the petitioner and the underlying immigration judge proceedings. Um, and I guess to respond to your question to the particular social group, I think that's why what we're asking is for remand to the I. J. To assess the petitioner herself described. So the original attorney, which definition? That's the problem I have here is how would you articulate it today? I think articulating it as a broader group of witnesses to crimes committed by Salvadoran gangs versus the narrower group that the original attorney described, which was, uh, believe witnesses to murders of relatives committed by MS 13. But that has to be. I mean, you have to have a particular group that that society perceives as a distinct group. How does society view that? I mean, how are they? How would I know, looking in the audience today that somebody might fall within that particular socialized group social group? And as we discussed in our briefing, the, uh, witness protection law that this court has discussed in Enrique's Rivas, specifically in the context of courtroom witnesses, does actually also apply to, uh, witnesses of crimes who are talking to the police. She didn't talk to the police that when the police came to talk to her, she basically declined to cooperate. Perfectly afraid. But she didn't cooperate, and she didn't testify in any proceedings. So how do we recognize her as a member of that group? She's clearly a victim of crime. No question about that. When I think your honor this issue that gang members could have imputed some kind of law enforcement cooperation to her. They threatened her, said, Don't go to the police indication that they did that. I mean, was there a follow up? Uh, there's no indication in the record that the gang member I mean, the gang members did threaten her. And then after the threat at her place of work, there was the instance where she heard the footsteps on her roof that she surmised were gang members keeping tabs on her and her family. Um, I believe the circumstantial evidence at least supports that finding. But what do we do with the fact that Jorge went back to the country and has essentially lived there without incident since he returned? I think the record makes clear that Jorge state has basically, at least at the time of the original hearing, had stayed indoors and never left his house. Now, the reasons for him staying indoors, as respondents point out, aren't brought out in the oral testimony, but in respondents written a lot of speculation on the part of the A. L. J. Doesn't it in order to to footsteps on the roof or M. S. 13 gang members who were following it up? We have to assume that he's essentially a prisoner in his in his house, and he's afraid to go out, which is why he hasn't had any further contact with M. S. 13 petitioners written affidavit at page 1 56 does state that he was staying indoors out of fear due to gang reprisals. So it didn't come out in the testimony. But gang reprisals. What reply? What reply? Reprisals? I think, you know, I believe the fear is that, you know, gang members would continue to, um, you know, follow track, keep tabs and possibly harm him as a witness to the crime that was committed. And this court has held that in cases where conceivably the only way an individual can remain safe in their home country is either by changing locations remaining in hiding. Um, that doesn't really amount to any true sense of safety. Um, and we would also hold that, you know, she said she wouldn't, you know, as you said, understandably, go to the police. But we would also submit that if an individual can only stay safe in their home country by basically never, she doesn't have any intention of cooperating with the police. If she were to return, does she? She doesn't have any intention. But basically, she would have to, for the time that she lived in El Salvador, basically never avail herself of her country's public safety, law enforcement, criminal justice system. Just because the fear that if somebody saw her going to the police station, even if it was on a different issue, they would assume that she was talking about the gang. Correct, Your Honor. I think the record shows a little bit of a stretch. I mean, I think there would have to be some indication, like perhaps they issued or a, you know, if the government issued or a subpoena in this case or something like that, that might, that might have provided the hook. But just this idea that now she's not able to seek legal protection at all, seems a bit of a stretch. I think that given the facts in the record, specifically at pages 328 and 336, that show that the levels of gang surveillance in El Salvador are quite extreme. And they do. They track people's movements. They track them going to and from their work. They track what neighborhood they're living in. They really have a kind of obsessive sense of vigilance on what people are doing. So I don't think that in this particular, uh, country under these particular facts, it is speculative. Um, that's speaking to the police. How do you get over the, our case law that says that we don't have the authority to, uh, consider a if it was not presented initially to the agency, because you're asking us to remand on a new formulation that was never presented below. Yes, Your Honor. Um, and I'm at time, but just briefly to respond to that. I think that, um, if you look at some of the unpublished cases cited at pages 15 and 16 of the opening brief, like Montiel Guerrero V. Barr and Acosta Peralta, um, you have for similar purposes. And it's not that, uh, remand is to the IJ to consider a completely new social group, but it's for the IJ to look at how the group was actually described by petitioner herself instead of, uh, prescribed by the petitioner herself in the hearing versus the narrower group that the legal counsel, uh, proffered. But I thought it was undisputed in the record that what she presented to the IJ and what she presented to the BIA are different. There's no doubt about that, right? The yes, the framing of the groups was different, but it's how if you look at, you know, the petitioner, is it you want us to just conclude that what was stated to the BIA was sort of legal counsel's gloss on what she had stated before to the IJ? I think the petitioner, uh, you know, before the IJ, they presented this particular social group of witnesses of murders of relatives. And the petitioner herself did not make a distinction that because one of the victims was my cousin, that's why it would be harm versus the victim that wasn't her cousin. She had a more general group of, I witnessed these murders, period. And that's how she described it. And so when the IJ, um, in part rejected her group based on the fact that, you know, there's no evidence that, uh, Salvador treats, you know, if your family is murdered versus your non family. Um, but that's not how she described it herself. So it's really just remanding to the IJ to assess how the petitioner had presented her claim herself at the hearing. I'm over time. We'll give you a minute for rebuttal. Thank you, Your Honors. Good morning. May it please the court, Roseanne Perry on behalf of the Attorney General. Ms. Perry, if you want, you can adjust the, yeah, there's a switch right underneath the top there. There you go. Okay. Um, substantial evidence supports the agency's denial of petitioner's request for asylum, withholding of removal and cap protection. There are a lot of issues in this case, but this case rises and falls on the issue of nexus. Petitioner failed to establish a nexus between the harm that she experienced and fears in a protected ground. The court has held that being a witness to a murder does not establish the required nexus to a protected ground. Petitioner was merely at the wrong place at the wrong time. The gang was motivated to ensure that she stayed silent. She was just merely a bystander, and the gang just didn't want to get arrested. More than a bystander. I thought she testified they actually took a shot at her. So she was a victim herself by the same assailants who murdered her cousin and the cousin's friend. Well, she was there, but she can't show that based on her proposed social group that there's a nexus to, um, but but the question was, I think, was there was the shot taken at her and she was a victim in a sentence? Yes, because she was there. And so you agree that she that you're just saying there's no nexus. Yes, that that was sort of random in your view. Yes, she was a bystander. Well, she was shot at because she was yelling for them not to kill her cousin. Yes. Um, but the desire to be free from violence or from a random violence is not a basis for asylum here. Um, with regard to past persecution, the incidents, well, she was, uh, I guess, in a sense, a someone who wants who witnesses the murder of a relative is different from someone who just observes the murder of a relative. She's not show a social distinction in this case. Um, with regard to well founded fair, her fair is speculative. Um, she has relatives that are still there. Javier's mother is still there. Her cousin's mother is still there, and she hasn't encountered any trouble. As you stated, Jorge is still there, and he hasn't encountered any trouble. Um, and I don't believe that speculation on what could occur is not enough to establish a reasonable fair. With regard to cat protection, a petitioner did not establish that is more likely than not that she will be tortured. First, she didn't suffer past torture. Um, there's no evidence that she will suffer future torture. Um, and there's no evidence that it would be at the hands of the government or anyone the government's unwilling to control. If the court doesn't have any further questions. Well, I guess I want to know how should we? I mean, you mentioned there's a lot of issues here. Should we just the B. I. A. Largely? Well, they adopted the I. J. Reasoning, but largely said, Look, you know, it seemed like it was more on the particular social group. I mean, if we decide that issue, is that enough here and just say there is no particular social group that's recognizable? Is that enough to resolve this entire case? Yes. And we wouldn't have to address the other issues, or would we still have to get into some of them? No, you wouldn't have to address the other issues. You just have to decide whether there is actually, like I said, whether is the nexus here. I believe that the case rises and falls on that issue. Well, you Yeah, you keep coming back to nexus. But isn't isn't there still a question of whether this is a particular social? I mean, there's really two questions. One is the one that presented to the I. J. Whether that's a particular social group and then whether the separate one presented to the B. I. A. Could be considered. But do we have to decide nexus? Or can we just decide that that's not a particularized social group at all? Right? You don't have to decide nexus. You can decide whether it's whether it's a cognizable social group. I mean, aren't we saying the same thing? If it's not a particularized social group, then it doesn't have a nexus to one of the five grounds under the Refugee Act, right? Okay, there are no other further questions the government would or we would ask that you deny the petition for review. Thank you. Thank you, Council. Got one minute for rebuttal. I'm gonna jump right in here. I want to make sure I understand your argument. So at the start of this case, the proposed group was witnesses of the murder of relatives committed by the gang. And then on appeal to the B. I. A. What I have in my notes is that the proposed group is witnesses publicly known to have been involved in criminal investigations against major gangs. I'm struggling with how that's a rephrasing of what she actually said, which I think what your argument is, this isn't really a new group. It's just kind of a repackaging, a clarification of what she said. That seems to be not just a repackaging, but there's some new elements there. Yes, Your Honor. And I what I have here is witnesses to crimes committed by existing law enforcement with the idea that that cooperation with law enforcement could be imputed to her. I believe that looking at the petitioner's own words in the record at page 130 in her testimony, 131, and also page 154 of her affidavit is that her claim, the kind of gravamen of her claim is that she witnessed these murders. The gang members wanted to discourage her cooperation with the police, and that's the substance of her claim. And again, the court does not have to make the fact finding in this instance of whether that's a cognizable social group, because the I. J. Was only reviewing the narrower social group proffered by the original attorney in the case. This court would only have to remand to the I. J. To assess that the alternative group in the first instance, without having to decide today whether it is or is not cognizable. If if we determine that you presented essentially a gloss on the first definition to the agency at the board level, if we decide that it's a new formulation, then you haven't exhausted your administrative remedies, and we don't have jurisdiction to address it, do we? If if you mean by gloss, I mean, again, are we hold that this is basically analogous to the situations in Monte El Guerrero and Acosta Peralta and those unpublished decisions where it the I. J. You know, did reject this narrower group and that, um, you know, it had been asked to the B. I. A. To consider the more accurate characterization of the social group than the narrower term that the attorney had proffered. The same problem that my sister is having. I see two different definitions here, which are and the difference is perception by the gang that she's now cooperating with the police as a witness to the homicides. And that was not presented by way of definition or formulation to the administrative law judge, the immigration judge. Correct, Your Honor. But the petitioner, it always was a central aspect of petitioners claim that all of this was related to their discouraging her going to the police, making statements to the police and really participating in any kind of criminal investigation. They were. They were threatening her with if she cooperated. But then the definition changed to the gang now perceived that she was a cooperating witness, and therefore that's the particularized social group persons who cooperate after they have witnessed a murder of family members. And again, Your Honor, that's where the gang, you know, imputing any kind of law enforcement cooperation and imputing from what? There's no evidence that the gang knew that she was cooperating. In fact, the record shows she was not when the police came a few days later. Neither she nor the victims. The cousin's mother wanted to have anything to do with the police because they were afraid. And I believe the fact that after after the threat and she said, you know, she wasn't going to cooperate. The fact that they continued to keep tabs on her by shows that they weren't just taking her word for it and leaving her alone, but instead kind of continuing to monitor her. I see him over time. Thank you, Council. Thank you. Thank you for your arguments in the case. The case is now submitted, and we're concluded for the day.
judges: TALLMAN, NELSON, FORREST